UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN ENGEL,<br><br>    Plaintiff,<br><br>v.<br><br>NOVEX BIOTECH LLC, et al.,<br><br>    Defendants. | Case No. 14-cv-03457-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 53 |

## INTRODUCTION

This is an action in diversity for damages and equitable relief by Plaintiff Julian Engel ("Plaintiff"), as an individual and on behalf of all others similarly situated, against Defendants Novex Biotech, LLC and GNC Corporation ("Defendants"), the manufacturers of Growth Factor-9, an over-the-counter supplement. Plaintiff alleges two claims for relief: violation of California's Unfair Competition law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; and violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 53. Plaintiff filed an Opposition (Dkt. No. 57) and Defendants filed a Reply (Dkt. No. 62). The Court finds this motion suitable for disposition without oral argument and VACATES the March 12, 2015 hearing. Civil L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion for the reasons set forth below.

## BACKGROUND

The following allegations are drawn from Plaintiff's Second Amended Complaint ("SAC"). Dkt. No. 48. Defendants manufacture, market, sell, and distribute Growth Factor-9, an

over-the-counter amino acid supplement marketed to boost human growth hormone ("HGH"). SAC ¶ 1. In their nationwide marketing campaign, including representations on Growth Factor-9's label, Defendants stated that Growth Factor-9 is "clinically tested" to provide a "682% mean increase in serum growth hormone levels." *Id.* ¶¶ 1, 22. Plaintiff contends that these representations are either false, misleading, deceptive, or all three. *Id.* ¶ 2.

Plaintiff alleges that he saw these advertisements for Growth Factor-9 in at least one magazine and on websites such as GNC.com. *Id.* ¶ 22. After reading the advertisements, he went to GNC to purchase Growth Factor-9 on October 13, 2013. *Id.* While there, he read the product label and in-store advertisements, which reaffirmed the claims he saw in the magazine and online advertisements. *Id.* Relying on these claims, Plaintiff purchased three boxes. *Id.* If he had known that Growth Factor-9 was being unlawfully sold and that it was not proven to provide the represented benefits, he would not have purchased it. *Id.* ¶¶ 22, 51.

Plaintiff represents a class of individuals who, in reliance upon Defendants' claims, purchased Growth Factor-9 and were allegedly thereby damaged. On July 30, 2014, Plaintiff filed suit in this matter. Dkt. No. 1. On August 29, 2014, Plaintiff filed a First Amended Complaint ("FAC"), in which he alleged two causes of action: (1) violation of the UCL; and (2) violation of the CLRA. Dkt. No. 15. Defendants moved to dismiss the FAC, arguing that Plaintiff brought only substantiation claims, for which there exists no available private right of action, and that even if Plaintiff's claims were construed to be something other than substantiation claims, he failed to demonstrate that Defendants' claims regarding Growth Factor-9 were false. Dkt. No. 34-1. The Court agreed and granted Defendants' motion on November 6, 2014. *Order re: Mot. to Dismiss*, Dkt. No. 47. The Court granted Plaintiff leave to amend, but only if he could allege facts from which the Court could conclude that Defendants' advertising representations were false. *Id.* at 7. The Court warned Plaintiff that it would not be enough to attack the methodology of Defendants' study; "instead, he must allege facts affirmatively disproving Defendants' claims." *Id.* The Court identified three ways he could accomplish this:

> Plaintiff could allege that one or more of the authorities alluded to
> actually studied or tested the formula Growth Factor-9 contains and
> found that it does not produce a 682% mean increase in HGH levels,

2

> or that Plaintiff himself did not experience such an increase when using the product, or that a study exists somewhere demonstrating that a 682% increase is categorically impossible to achieve in an over-the-counter pill.

*Id.*

Plaintiff filed his SAC on December 8, 2014. In addition to his previous claims, Plaintiff adds allegations regarding Defendants' use of the phrase "Clinically Tested" on Growth Factor-9's label. SAC ¶¶ 3-4. He alleges that a reasonable consumer reading this would interpret "clinically tested" to mean "clinically proven," and that Defendants have clinically tested Growth Factor-9 and have adequate scientific substantiation for their claims. *Id.* Plaintiff contends that "when a manufacturer, like Defendants here, makes representations about a product purporting to provide health benefits, the reasonable consumer rightfully believes that the manufacturer, being in a greater position of knowledge, has the scientific substantiation to back up its health claims." *Id.* ¶ 5.

The SAC also includes allegations regarding the study on which the Growth Factor-9 advertising claims rely. Plaintiff alleges that it "is not a study report but a summary that would not be accepted by any credible, peer-reviewed scientific journal," that "[t]here are no authors identified with regard to the study summarized on the Growth Factor-9 label, another indicator to experts in the field that the study is not to be relied upon," and "the summary of the study's results reveal numerous flaws that would lead experts in the area to conclude that this study is not credible and cannot be relied upon to base efficacy conclusions." *Id.* ¶¶ 34-36.

Defendants now move to dismiss the SAC, arguing that it "is again based entirely on allegations for which there is simply no private right of action—allegations concerning a purported lack of scientific substantiation for the advertising claims related to [Growth Factor-9]."[1] Mem. at 4, Dkt. No. 50. Defendants argue that the SAC is fatally deficient because it does

---

[1] Defendants ask the Court to take judicial notice of various documents in support of their Motion. Dkt. No. 52. Plaintiff opposes Defendants' request. Dkt. No. 51. Although in general the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion, *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001), the Court may, in some circumstances, consider evidence upon which the Complaint necessarily relies, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the Court does not rely on any of the materials for which judicial notice is sought, and therefore Defendant's Motion is DENIED AS MOOT.

not contain allegations based on testing, scientific literature, or anecdotal evidence claiming that the advertisements are false or misleading. *Id.* at 5. While the SAC contains allegations that Defendants' advertising claims are based on an underlying study that is flawed, Defendants contend that these allegations cannot form the basis for actions under the UCL or CLRA because they "are lack of substantiation claims—they all attack the scientific support for [Growth Factor-9's] claims without citing to or alleging that there are studies or other scientific evidence that contradict the scientific support on which Defendant[s] substantiates the advertising claims." *Id.* at 6. Even if Plaintiff could bring his claims, Defendants argue they fail as a matter of law because the SAC fails to demonstrate that Defendants' claims regarding Growth Factor-9 are false. *Id.* at 11.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted).

## DISCUSSION

As in their previous motion, Defendants argue that Plaintiff's claims must be dismissed because they are based entirely upon substantiation allegations for which there exists no private right of action.[2]

In response, Plaintiff argues that his falsity claims are not based on a lack of substantiation theory, but instead allege that Defendants' representations are false, because there is no clinical proof supporting any of the represented benefits on the label, and the summary of a study Defendants include on the Growth Factor-9 label cannot serve as this clinical proof because "it is

---

[2] Defendants also appear to raise a standing argument, arguing that Plaintiff fails to allege that he "even took the product in the first place." Mot. at 10. "However, the sale itself caused an economic injury-in-fact, and therefore this Court has standing to adjudicate the controversy." *Cortina v. Wal-Mart, Inc.*, 2015 WL 260913, at *2 (S.D. Cal. Jan. 20, 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998)).

1  so riddled with flaws that it cannot be relied on to draw efficacy conclusions." Opp'n at 1.
2  Plaintiff also argues that the SAC alleges two additional claims: (1) that Defendants' marketing
3  and sale of Growth Factor-9 are unlawful under the UCL; and (2) that Defendants are liable for
4  engaging in misleading representations because it lacks substantiation for its claims. *Id.* at 1-2.

### A. False Advertising

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Cal. Civ. Code § 1770. "In an action for false advertising under the UCL and CLRA, the plaintiff 'bears the burden of proving the defendant's advertising claim is false or misleading.'" *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. 2012) (quoting *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1342 (2003)). Individuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation. *Id.* Instead, that right is reserved to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney . . . ." Cal. Bus. & Prof. Code § 17508. Therefore, because no private right of action exists for a substantiation claim, private litigants may only bring claims under these sections for false or misleading advertising, and must provide adequate factual bases for such allegations. *Fraker v. Bayer Corp.*, 2009 WL 5865678, at *8 (E.D. Cal. Oct. 6, 2009).

In the false advertising context, an advertising claim is false if it has "actually been disproved," that is, if the plaintiff can point to evidence that directly conflicts with the claim. *Eckler v. Wal-Mart Stores, Inc.*, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1, 2012). By contrast, an advertising claim that merely lacks evidentiary support is said to be unsubstantiated. *Id.* ("There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved. In common usage, we might say that both are 'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former.").

In his SAC, Plaintiff alleges that Defendants' advertising for Growth Factor-9 is false and misleading because: (1) there are no studies that support Defendants' representations, and Defendants lack any credible scientific substantiation for these representations; (2) the supporting summary of a study Defendants rely on is "riddled with flaws," including that it is written by an unknown author and that it is not a study report but a summary that would not be accepted by any credible, peer-reviewed scientific journal; (3) a reasonable consumer would interpret "clinically tested" as meaning "clinically proven," and such a consumer rightfully believes that Defendants have clinically tested the product and has the scientific substantiation to back up its health claims; and (4) experts in HGH deem the only credible scientific evidence to substantiate human health benefit claims is evidence from high quality randomized controlled clinical trials, and no such trials exist to substantiate Defendants' claims. SAC ¶¶ 2, 3-6, 10-11, 34.

### 1. Defendants' Summary

The Court previously addressed Plaintiff's allegations regarding the flaws in Defendants' study and the lack of any other study supporting their representations. *Order re: Mot. to Dismiss* at 5 ("Plaintiff's argument that Defendants claim support for their representations, when there in fact is no such support, perfectly describes a substantiation claim." (citing *Eckler*, 2012 WL 5382218, at *3)). Once again, the SAC cites no study that disproves Defendants' claims. The SAC claims that "Plaintiff, through her [sic] counsel and her [sic] counsel's consulting experts, has conducted a comprehensive search of the published literature on the ingredients specific to the Defendants' Product." SAC ¶ 42. Based on this search, Plaintiff alleges that "[n]o published reports . . . were found supportive of the represented 682% HGH increase." *Id.* However, Plaintiff still does not allege that a study exists showing that these benefits are categorically impossible to achieve, or that one or more authorities studied or tested Growth Factor-9's formula and found that it does not produce the results Defendants claim.

Thus, as before, the Court finds that the SAC alleges a substantiation claim. Courts have repeatedly held that actions based on such allegations are not actionable by private individuals. *Kwan v. SanMedica Int'l, LLC*, 2014 WL 5494681, at *3 (N.D. Cal. Oct. 30, 2014); *Johns v. Bayer Corp.*, 2013 WL 1498965 *36 (S.D. Cal. Apr. 10, 2013) ("[I]n the absence of affirmative

7

scientific evidence . . . that proves that zinc and vitamin E did not support prostate health, the strength of Bayer's evidence is irrelevant and Plaintiffs claims are based on 'lack of substantiation' rather than proof of falsity."); *Stanley*, 2012 WL 1132920, at *4 ("alleged lack of substantiation does not render claims false and misleading under the UCL or CLRA."); *Fraker*, 2009 WL 5865687, at *8 (granting motion to dismiss where the plaintiff failed to allege that "Defendant's advertising claims with respect to Product are actually false; not simply that they are not backed up by scientific evidence."). Thus, Plaintiff's allegations that Defendants' claims are not substantiated by the supporting study, standing alone, cannot serve as a basis to assert claims under either the UCL or CLRA.

However, the Court must look at the SAC as a whole to determine whether Plaintiff alleges only a substantiation claim. *See Bronson v. Johnson & Johnson, Inc.*, 2013 WL 1629191, at *8 (N.D. Cal. Apr. 16, 2013). "A claim can survive a lack of substantiation challenge by, for example, alleging studies showing that a defendant's statement is false." *Id.*

2. FTC and FDA

In his FAC, Plaintiff alleged: (1) the Federal Trade Commission ("FTC") has stated that "no reliable evidence" supports that non-prescription products have the same effect as prescription HGH (FAC ¶ 22); (2) the New England Journal of Medicine published an article in the 1990s touting HGH's benefits, and another article in 2003 warning about the potential for misleading consumers (*Id.* ¶¶ 23-24); and (3) the Food & Drug Administration ("FDA") has stated that "it is unaware of any reliable evidence to support anti-aging claims for over-the-counter pills and sprays that supposedly contain HGH" (*Id.* ¶ 25). The Court found that these statements may be relevant to Plaintiff's claims, but they failed to demonstrate that Defendants' advertising claims are false. *Order re: Mot. to Dismiss* at 6. The Court noted that none of the authorities cited actually refer to Growth Factor-9, and that there was no way of knowing whether the alleged statements were made before Growth Factor-9 was in testing or on the market. *Id.* at 6-7. For these reasons, the Court granted leave to amend, but only if Plaintiff could allege facts "affirmatively disproving Defendants' claims." *Id.* at 7.

In his SAC, Plaintiff has dropped all mention of these authorities and statements entirely.

8

In fact, the SAC cites no study that disproves Defendants' claims. As discussed above, Plaintiff alleges that his counsel and his counsel's consulting experts conducted a comprehensive search of the published literature on the ingredients specific to Growth Factor-9, but found no reports supportive of the represented 682% HGH increase representations. SAC ¶ 42. However, Plaintiff still does not allege that a study exists showing that these benefits are categorically impossible to achieve. Again, in the false advertising context, an advertising claim is false if it has "actually been disproved." *Eckler*, 2012 WL 5382218, at *3. Plaintiff's allegation that Defendants' claim lacks evidentiary support is said to be unsubstantiated. *Id.*

### 3. Clinically Tested

Plaintiff has also added allegations that "[a] reasonable consumer reading Defendants' Growth Factor-9 label as a whole would rightfully interpret 'clinically tested' to mean 'clinically proven,'" and would "rightfully believe[] that Defendants have clinically tested the Product and have adequate scientific substantiation for the claims linked to the clinically tested representation." SAC ¶¶ 3-4. Plaintiff contends this is deceptive or misleading because "none of the ingredients in Growth Factor-9 alone, or in combination, have been proven capable of raising HGH levels by a mean of 682%," and Defendants therefore "lack any credible scientific substantiation for these representations." *Id.* ¶¶ 4-6. Plaintiff argues that Defendants' use of "Clinically Tested" takes his claim out of the realm of the lack of substantiation cases. Opp'n at 5. The Court disagrees.

In its previous Order, the Court addressed Plaintiff's argument that he "does not simply allege that Defendant's growth hormone benefit representations are unsubstantiated; rather Plaintiff alleges that Defendant misrepresents that its growth hormone benefit representations are supported by clinical testing when they are not." *Order re: Mot. to Dismiss* at 5. The Court found that "Plaintiff's argument that Defendant claims support for its representations, when there in fact is no such support, perfectly describes a substantiation claim." *Id.* (citing *Eckler*, 2012 WL 5382218, at *3).

In support of his revised claim, Plaintiff cites to the same cases cited in his prior opposition: *McCrary v. Elations Co., LLC*, 2013 WL 6403073 (C.D. Cal. July 12, 2013); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, (E.D.N.Y. 2013); *Rikos v. Proctor & Gamble Co.*, 782 F.

1  Supp. 2d 522 (S.D. Ohio 2011); *Cabral v. Supple, LLC*, No. 12-00085-MWF, Dkt. No. 29 at 1, 4
2  (C.D. Cal. July 3, 2012); and *Garcia v. Clarins, et al.*, No. 14-cv-21249, Dkt. No. 16 at 16 (S.D.
3  Fla. Sept. 4, 2014). *See* Opp'n at 5-7. However, as the Court observed in its prior Order, in those
4  cases the plaintiff was able to demonstrate, with affirmative evidence, that the advertising claims
5  are false in and of themselves. *See Order re: Mot. to Dismiss* at 6 ("The Court therefore rejects
6  Plaintiff's contention that there exists any 'recognized exception' to the rule against private
7  enforcement of substantiation claims"). Plaintiff has failed to provide any such affirmative
8  evidence here, and none of the cases cited by Plaintiff stand for the proposition that he may make
9  an end run around the bar against private substantiation claims by simply alleging that an
10 advertiser's reference to the substantiation itself is misleading.
11 Further, in the SAC, Plaintiff acknowledges that testing has been performed, but disputes
12 the adequacy of that testing. SAC ¶ 34. If the Court were to permit Plaintiff to proceed on this
13 theory, private litigants could bring substantiation causes of action on advertising claims simply
14 by adding "magic words," tethering the claims to an advertiser's particular substantiation. *See*
15 *King Bio*, 107 Cal. App. 4th at 1338 (explaining the purpose of the rule as follows: "This
16 limitation prevents undue harassment of advertisers and is the least burdensome method of
17 obtaining substantiation for advertising claims"); *see also* Cal. Bus. & Prof. Code § 17508 (giving
18 power to demand substantiation for advertising only to "the Director of Consumer Affairs, the
19 Attorney General, any city attorney, or any district attorney"). If Plaintiff wishes to bring claims
20 alleging that Defendants' advertisements are false or misleading, then he must do so based on
21 actual facts showing this, not simply an assertion that Defendants' substantiation is inadequate.
22 *King Bio*, 107 Cal. App. 4th at 1342.
23 **B.    Misleading and/or Deceptive Advertising**
24 Regardless of whether the Growth Factor-9 claims are provably false, Plaintiff alleges that
25 he can prevail by showing that the challenged representations are deceptive, misleading, or both.
26 SAC ¶ 6. He argues that this is a separate and independent claim under the CLRA, and maintains
27 that *King Bio*, 107 Cal. App. 4th 1336—the source of the rule of law that lack of substantiation
28 claims do not state a claim—"is either wrongly decided or has been wrongly applied to misleading

10

and deceptive claims." Opp'n at 2. Specifically, Plaintiff notes that the CLRA provides for claims against false, misleading or deceptive representations," and "[r]equiring a plaintiff to establish falsity in order to state a claim for misleading or deceptive representations violates basic principles of statutory construction by rendering the terms 'misleading' and 'deceptive' surplusage." *Id.* As such, he seeks review of the *King Bio* holding. *Id.*

If the Court were to adopt Plaintiff's proposal, it would not only overturn *King Bio*, but the entire body of law on this issue, including the laws enacted by the California State Legislature. As the Court previously observed, "[i]ndividuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation. Instead, that right is reserved to 'the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney . . . .'" *Order re: Mot. to Dismiss* at 4 (quoting Cal. Bus. & Prof. Code § 17508 and citing *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012) ("Private individuals may not bring an action demanding substantiation for advertising claims" and "alleged lack of substantiation does not render claims false and misleading under the UCL or CLRA.")). As this rule is both settled and fundamental, the Court declines to overrule the Legislature's explicit exception for cases where advertising is allegedly misleading or deceptive due to lack of substantiation. *See* Cal. Bus. & Prof. Code § 17508 (giving power to demand substantiation for advertising only to "the Director of Consumer Affairs, the Attorney General, any city attorney, or any district attorney"); *see also King Bio*, 107 Cal. App. 4th at 1345-46 ("The Legislature indicated an intent to alter the burden of substantiating advertising claims only with respect to prosecuting authorities").

**C.     Plaintiff's UCL Claim**

In his Opposition, Plaintiff argues that he has stated a valid claim under the UCL because "selling Growth Factor-9 without the prerequisite competent and reliable scientific evidence/substantiation" is "unlawful." Opp'n at 11. However, as discussed above, individuals may not bring suit under the UCL or the CLRA alleging only that advertising claims lack substantiation. Further, unsubstantiated claims are already, by definition, unlawful under section 17508: "It shall be *unlawful* for any person doing business in California and advertising to

11

consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence. . . ." Cal. Bus. & Prof. Code § 17508 (emphasis added). Thus, as the Legislature has carved out a specific exception limiting the right to bring lack of substantiation claims to prosecuting authorities, private litigants may only bring claims under these sections for false or misleading advertising, and must provide adequate factual bases for such allegations. *Kwan*, 2014 WL 5494681, at *2 (citing *Fraker*, 2009 WL 5865678, at *8). As Plaintiff has failed to show that Defendants' advertising claims have "actually been disproved," his UCL claim must also fail.

## CONCLUSION

Based on the analysis above, Defendant's Motion to Dismiss is **GRANTED**. As the Court previously provided Plaintiff the opportunity to amend his complaint, and he has once again failed to allege facts from which the Court could conclude that Defendant's advertising representations were false, the case is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall close the file.

**IT IS SO ORDERED.**

Dated: February 25, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge